UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

LAMON TANEAL HEMINGWAY, SR.,    )
                                         )
       Plaintiff,                 )
                                         )
       vs.                       )          Case No. 1:17 CV 50 (JMB)
                                         )
BRANDEN MCSPADDEN,           )
                                         )
       Defendant.           )

**MEMORANDUM AND ORDER**

This matter is before the Court on defendant's motion for summary judgment. Plaintiff, who proceeds pro se, has not filed a response in opposition or requested an extension of time to do so. All matters are pending before the undersigned United States Magistrate Judge with the consent of the parties, pursuant to 28 U.S.C. § 636(c).

Plaintiff Lamon Taneal Hemingway, Sr., was incarcerated at the Southeast Correctional Center at the time of the events giving rise to this dispute.[1] He filed suit pursuant to 42 U.S.C. § 1983, claiming that he was subjected to conditions of confinement that violate the Eighth Amendment's prohibition of cruel and unusual punishment. Plaintiff alleges that he was placed on suicide watch for eight days in a cell with a "Chinese toilet" and no running water, and that defendant corrections officer Branden McSpadden[2] denied him toilet paper in retaliation for

---

[1] Plaintiff was released from prison on December 2, 2017.

[2] Plaintiff named 17 corrections officers and one case manager in his complaint, stating generally that they denied him toilet paper and tried to retaliate against him. In reviewing his complaint under 28 U.S.C. § 1915(e), the Court noted that the only defendant that plaintiff specifically identified as denying him toilet paper was defendant McSpadden. The Court accordingly dismissed plaintiff's claims against the other defendants. [Doc. # 5]. At deposition, plaintiff identified at least seven individuals who denied him toilet paper. [Doc. # 33-2 at 71-73].

plaintiff's attempts to file "offender abuse and . . . Prison Rape Elimination Act allegations."

Plaintiff further alleges that he was not provided with any means to clean himself and was made

to eat and sleep in the presence of his feces for two days. Defendant moves for summary

judgment, arguing that he is entitled to qualified immunity. For the reasons discussed below, the

Court concludes that the issues in the case cannot be resolved based on the present motion.

Accordingly, the Court will direct defendant to resubmit his motion and will order plaintiff to file

a response.

## I.      Background

On December 30, 2016, plaintiff had a seizure while he was in his cell. When he was

unable to obtain assistance, he "popped the sprinkler head." Plaintiff's Dep. [Doc. # 33-2 at 66-

67].[3] He anticipated being moved to a "dry cell" — a cell with no property — but instead he was

transferred to a suicide cell, even though he had not said that he felt suicidal.[4] Id. at 68-69.

Plaintiff was taken off suicide watch on January 2, 2017, but remained in the suicide cell until

January 4, 2017. Complaint [Doc. # 1 at ¶¶ 14-15]; Deposition at 78.

According to allegations in the complaint, the suicide cell was equipped with a "Chinese

toilet," which plaintiff described as a hole in the floor covered by bars placed a half-inch apart.

Complaint at ¶¶ 1, 15, 28. There was toilet paper in the cell on December 30, 2016, but plaintiff

used it to cover the camera in the cell so someone would come check on him and get him

medical care. Corrections officers uncovered the camera again but did not take him to the

---

[3] Materials in the record are cited with the CM/ECF document number and the page number that appears
in the red header.

[4] Plaintiff's statements on this point are contradictory. In his complaint, he alleged that he was in the
"rubber room suicide cell due to . . . being suicidal and very depressed . . ." Complaint at ¶ 13. [Doc. #
1]. At deposition, however, he testified that he did not state that he was suicidal when he was placed in
the cell but did have suicidal thoughts for a day or two after he was placed there. Id. at 61.

medical unit. Plaintiff testified that he covered the camera four times that day before giving up because he realized he was not going to be seen by medical personnel. Deposition at 86-88.

Later in the day on December 30th, plaintiff asked defendant McSpadden and others for toilet paper but he was not provided any. Id. at 71-81. According to plaintiff, defendant McSpadden specifically told plaintiff he would not receive any toilet paper, even though prisoners on suicide watch received five squares of toilet paper each day. Id. at 77, 79. Plaintiff delayed moving his bowels for several days because he did not have any toilet paper. Id. at 83-84; see also Complaint at ¶ 13 (plaintiff alleges he did not eat from December 30 to January 2 "because [he] needed to use the restroom"). Once he did have a bowel movement, he used his boxer shorts to wipe away feces and blood. Complaint at ¶¶ 23-24. He was denied underwear and so he wrapped his T-shirt around himself like a diaper. Id. at ¶¶ 30, 32. Plaintiff states that his feces remained on top of the bars covering the pit toilet because he had nothing with which to push the material into the toilet. Complaint at ¶¶ 28-29. Plaintiff was then served lunch, but he had no means of cleaning his hands. Deposition at 84-85. He remained in the cell with exposed feces for two days. Id. He slept within three feet of the feces. Complaint at ¶ 2. Plaintiff alleged that the smell caused officers and staff outside the cell to gag. Id. at ¶ 5. Plaintiff developed rashes around his anus, genitals and thighs which lasted for "weeks." Id. at ¶ 38.

Plaintiff alleges that defendant McSpadden denied him toilet paper in retaliation for his attempt to assert grievances and judicial claims. Complaint at ¶ 11; Deposition at 91. He testified that he filed grievances and court cases in response to what he saw as a psychological "game" or "trap" in which prison officials tried to "get you to snap" and "grab" or "touch us so we can give you more time." Deposition at 53. He testified that he did "just the opposite. I just

put the paperwork on you." In response, however, "you retaliate against me, and stick me in a cell with no toilet paper for eight days because I can think." Id.

## II. Legal Standard

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under Rule 56, a party moving for summary judgment bears the burden of demonstrating that no genuine issue exists as to any material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and a fact is material if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Once the moving party discharges this burden, the non-moving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Anderson, 477 U.S. at 247. The non-moving party may not rest upon mere allegations or denials in the pleadings. Id. at 256. "Factual disputes that are irrelevant or unnecessary" will not preclude summary judgment. Id. at 248. The Court must construe all facts and evidence in the light most favorable to the non-movant, must refrain from making credibility determinations and weighing the evidence, and must draw all legitimate inferences in favor of the non-movant. Id. at 255.

In this district, the movant's facts are deemed admitted if not specifically controverted by the party opposing the motion. E.D. Mo. L.R. 4.01(E). Nonetheless, where a plaintiff fails to respond to a motion for summary judgment, the Court should not treat this non-response as sufficient to dispose of the motion. Roland v. Wallace, No. 1:14CV166 ACL, 2017 WL 1196426, at *2 (E.D. Mo. Mar. 31, 2017) (citing Lowry v. Powerscreen USB, Inc., 72 F. Supp.2d

4

1061, 1064 (E.D. Mo. 1999). "Courts should proceed to examine those portions of the record properly before them and decide for themselves whether the motion is well taken." Id. "In so ruling, even on an unopposed motion for summary judgment, the court should review the facts in a light most favorable to the party who would be opposing the motion." Id.

### III. Discussion

#### A. Qualified Immunity

Qualified immunity shields government officials from liability in a § 1983 action unless their conduct violates a clearly established right of which a reasonable official would have known. Burnikel v. Fong, 886 F.3d 706, 709 (8th Cir. 2018) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). To resolve a government official's claim of qualified immunity, courts apply a two-part test, asking whether the plaintiff has demonstrated a violation of a constitutional right and whether that constitutional right was clearly established at the time of the violation. Williams v. Jackson, 600 F.3d 1007, 1012 (8th Cir. 2010) (citing Harlow, 457 U.S. at 818). These questions may be addressed in either order. Id. (citing Pearson v. Callahan, 555 U.S. 223, 236 (2009)). "[W]hen an official's intent is an element of the § 1983 claim," as it is in this Eighth Amendment claim, "and if the official has made a properly supported motion for summary judgment based on qualified immunity, the plaintiff 'must identify affirmative evidence from which a jury could find that the plaintiff has carried his or her burden of proving the pertinent motive.'" Burns v. Eaton, 752 F.3d 1136, 1139 (8th Cir. 2014) (quoting Crawford–El v. Britton, 523 U.S. 574, 600 (1998)).

Before turning to the merits of defendant's assertion that he is entitled to qualified immunity, three issues must be addressed. First, the evidentiary record in support of the motion is quite thin, consisting solely of plaintiff's complaint, the departmental standard operating

5

procedures for mental health close observation and for suicide intervention, and plaintiff's deposition. Defendant has not presented an affidavit or declaration.

Second, plaintiff has not filed a response in opposition to the defendant's motion and, as a consequence, he is deemed to have admitted the facts set forth in the Statement of Uncontroverted Material Facts (SUMF). [Doc. # 33]. <u>See</u> E.D. Mo. L.R. 4.01(E) ("All matters set for in the statement of [uncontroverted facts] shall be deemed admitted for purposes of summary judgment unless specifically controverted by the opposing party."). This admission of relevant facts frequently creates an insurmountable barrier to the nonmoving party. In this case, however, the summary judgment motion and evidentiary record are silent with respect to the following relevant allegations from the complaint: plaintiff's feces remained on top of the bars covering the pit toilet, the odor of feces was strong enough to cause officers outside the cell to gag, he slept within three feet of the exposed feces, he wore his T-shirt like a diaper, there was no sink in the cell, he was not allowed to shower, and he developed rashes. Complaint at ¶¶ 5, 28-29, 30, 32, 35, 36, 38.

Third, plaintiff's complaint raises two claims: (1) whether depriving plaintiff of toilet paper and leaving him in a cell with exposed feces and no means to clean his body or hands violated the Eighth Amendment; and (2) whether defendant's alleged retaliatory motive in denying plaintiff toilet paper violated a protected right. In his motion for summary judgment, however, defendant characterizes plaintiff's Eighth Amendment claim as the right not to sit next to a full toilet for two days and to have toilet paper in a suicide cell after misusing the existing supply "for malfeasance and manipulation." [Doc. # 32 at 7-9, 11]. This characterization misstates the gravamen of plaintiff's Eighth Amendment claims. In addition, defendant has not addressed plaintiff's retaliation claim.

## B. The Eighth Amendment Claims

The Eighth Amendment prohibits "cruel and unusual punishments" and requires that prison officials provide humane conditions of confinement. Farmer v. Brennan, 511 U.S. 825, 832 (1994). "Prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" Id. (quoting Hudson v. Palmer, 468 U.S. 517, 526–27 (1984)); Brown v. Fortner, 518 F.3d 552, 558 (8th Cir. 2008) (Eighth Amendment provides "right to safe and humane conditions of confinement"). The Constitution "does not mandate comfortable prisons," however, Rhodes v. Chapman, 452 U.S. 337, 349 (1981), and "the risk that the prisoner complains of [must] be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk." Helling v. McKinney, 509 U.S. 25, 36 (1993) (emphasis in original). In order to prove an Eighth Amendment claim, a prisoner must satisfy both an objective and a subjective requirement. Irving v. Dormire, 519 F.3d 441, 446 (8th Cir. 2008). The first requirement tests whether, viewed objectively, the deprivation of rights was sufficiently serious. Id. (citing Farmer, 511 U.S. at 834). To the extent that certain conditions are only "restrictive" or "harsh," they are merely part of the penalty that criminal offenders pay for their offenses against society and thus do not satisfy the first requirement. See Rhodes, 452 U.S. at 347. To satisfy the second requirement, the inmate must prove that the prison officials had a "sufficiently culpable state of mind." Irving, 519 F.3d at 446. In prison conditions claims, including threats to an inmate's health and safety, the subjective inquiry is whether the prison officials were deliberately indifferent to a serious risk of harm to the inmate. Id. Defendant has not addressed the deliberate-indifference requirement.

Courts have found that, under certain circumstances, the deprivation of toiletries, like toilet paper, can rise to the level of unconstitutional conditions of confinement. See Trammell v. Keane, 338 F.3d 155, 165 (2d Cir. 2003) (citing cases). And, courts have been especially cautious about condoning conditions that include an inmate's proximity to human waste. Fruit v. Norris, 905 F.2d 1147, 1151 (8th Cir. 1990). "Exposure to human waste, like few other conditions of confinement, evokes both the health concerns emphasized in Farmer and the more general standards of dignity embodied in the Eighth Amendment." DeSpain v. Uphoff, 264 F.3d 965, 974 (10th Cir. 2001); see also Brooks v. Warden, 800 F.3d 1295, 1305 (11th Cir. 2015) ("[T]he health risks of prolonged exposure to human excrement are obvious.") (reversing dismissal of Eighth Amendment claim where prisoner was forced to defecate into his jumpsuit and sit in his own feces for two days).

Defendant argues that sitting and eating next to "a full toilet" for two days without toilet paper is not objectively serious for the purposes of the Eighth Amendment, citing Smith v. Copeland, 87 F.3d 265, 268-69 (8th Circuit 1996), and Jones v. Briggs, No. 4:16CV00593 BSM/JTR, 2018 WL 662362, at *5 (E.D. Ark. Feb. 1, 2018), report and recommendation adopted, No. 4:16-CV-00593 BSM, 2018 WL 1083036 (E.D. Ark. Feb. 26, 2018). In Smith, the Eighth Circuit rejected the Eighth Amendment claim of a prisoner who was subjected to an overflowed toilet and had to "endure the stench of [his] own feces and urine for four days." In Jones, a prisoner failed to establish an Eighth Amendment violation based on evidence that he was housed without toilet paper for six days in a cell with a toilet that could not be flushed. These cases are distinguishable from the present case, however, because plaintiffs in both cases were offered an opportunity to rectify the unsanitary condition. See Smith, 87 F.3d at 268 (plaintiff was offered, but declined, cleaning equipment and opportunity to flush toilet); Jones,

2018 WL 662362, at *5 (plaintiff was allowed to shower each of the six days he was confined in the cell and never alleged that he came in contact with human waste).

Defendant also cites cases for the proposition that being denied toilet paper for several days does not violate the Constitution. See, e.g., Brown v. Stovall, No. 4:09-CV-4008, 2010 WL 3761346, at *6 (W.D. Ark. Aug. 30, 2010), report and recommendation adopted, No. 09-CV-4008, 2010 WL 3746944 (W.D. Ark. Sept. 20, 2010) (prisoner's allegations that he was denied toilet paper for three days "clearly insufficient"); see also Dye v. Lomen, 40 Fed. Appx. 993 (7th Cir. 2002) (prison officials' failure to provide prisoner with toilet paper for several days did not constitute cruel and unusual punishment in violation of Eighth Amendment); Harris v. Fleming, 839 F.2d 1232, 1234–36 (7th Cir. 1988) (lack of toilet paper for five days not cruel and unusual punishment). Again, however, plaintiff claims not only that he was denied toilet paper but also that he was forced to eat and sleep in close proximity to an exposed mound of feces for two days, with a stench that caused others to gag, while being deprived of the means to clean his hands or body after having a bowel movement.

Defendant rightly notes that plaintiff used the toilet paper that was initially available in the cell to cover the camera in order to get corrections officers to respond to his cell and take him to the medical unit. This conduct violated institutional safety rules and clearly justifies a restriction on further supplies for some period of time. It does not necessarily follow, however, that the Eighth Amendment allows prison officials to leave a recalcitrant inmate in a small cell with exposed feces for two days while denying him the opportunity to clean his body and hands.

Defendant has not addressed the gravamen of plaintiff's claims and thus the Court cannot determine whether he is entitled to qualified immunity. The Court will allow defendant the

9

opportunity to resubmit his motion. In addition, the Court will direct plaintiff to file a response or face possible dismissal of his action for failure to prosecute.

### C. Retaliation Claim

Plaintiff alleges that defendant McSpadden denied him toilet paper in retaliation for his attempt to assert grievances and judicial claims. Complaint at ¶ 11; Deposition at 91. A prisoner's right under the First Amendment to petition for redress of grievances to the courts or under a prison's grievance procedures is clearly established in the Eighth Circuit. See Nelson v. Shuffman, 603 F.3d 439, 449–50 (8th Cir. 2010) (right to use prison grievance system); Myers v. Hundley, 101 F.3d 542, 544 (8th Cir. 1996) ("Inmates undeniably enjoy a constitutional right of access to the courts and the legal system."). Actions taken in retaliation for an inmate's exercise of these rights are actionable under 42 U.S.C. § 1983. See Nelson, 603 F.3d at 450 ("[I]t has for over twenty years been the law of this circuit that actions taken in retaliation for an inmate's filing of a grievance are actionable under 42 U.S.C. § 1983."); Sprouse v. Babcock, 870 F.2d 450, 452 (8th Cir. 1989) ("Prison officials cannot properly bring a disciplinary action against a prisoner for filing a grievance that is determined by those officials to be without merit anymore than they can properly bring a disciplinary action against a prisoner for filing a lawsuit that is judicially determined to be without merit."). Defendant should address this claim in his resubmitted motion for summary judgment.

Accordingly,

**IT IS HEREBY ORDERED** that defendant's motion for summary judgment [Doc. # 31] is **denied without prejudice**.

**IT IS FURTHER ORDERED** that defendant shall have until **January 15, 2019**, to file a motion for summary judgment directed to plaintiff's claims that he was exposed to human

waste in unsanitary conditions in violation of the Eighth Amendment and was denied toilet paper in order to retaliate for engaging in protected activity.

**IT IS FURTHER ORDERED** that plaintiff shall have until **February 15, 2019**, to file a response to defendant's motion. Plaintiff's response must comply with Rule 56 of the Federal Rules of Civil Procedure and Local Rule 4.01(E). Plaintiff is specifically warned that failure to respond to defendant's motion will result in dismissal of his complaint for failure to prosecute, pursuant to Rule 41(b).

/s/ *John M. Bodenhausen*
JOHN M. BODENHAUSEN
UNITED STATES MAGISTRATE JUDGE

Dated this 9th day of November, 2018.